## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NJOY, LLC, | |
| *Plaintiff*, | |
| v. | C.A. No. _____ |
| JUUL LABS, INC., | **JURY TRIAL DEMANDED** |
| *Defendant*. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff NJOY, LLC ("NJOY" or "Plaintiff") files this Complaint for patent infringement against Defendant JUUL Labs, Inc. ("JLI" or "Defendant"), and alleges as follows:

### NATURE OF THE ACTION

1.     This is an action for infringement of United States Patent Nos. 10,334,881 ("the 881 patent") and 11,497,864 ("the 864 patent") (collectively, "the Asserted Patents") under the United States Patent Laws, 35 U.S.C. § 1 *et seq.*

2.     A true and correct copy of the '881 patent is attached as Ex. 1.

3.     A true and correct copy of the '864 patent is attached as Ex. 2.

### THE PARTIES

4.     NJOY, LLC is a limited liability company organized under the laws of Delaware with its principal place of business at 9977 N 90th Street, Scottsdale, Arizona 85258.

5.     On information and belief, JLI is a Delaware corporation with its principal place of business at 1000 F Street NW, Washington, D.C. 20004.

## JURISDICTION AND VENUE

6.     This is an action for patent infringement arising under the United States Patent Act, 35 U.S.C § *1 et seq.*

7.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8.     This Court has personal jurisdiction over Defendant, because JLI is a Delaware corporation and has purposefully availed itself of the benefits and protections of Delaware state law by incorporating under Delaware law.

9.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(b), because JLI is a Delaware corporation and thus resides in this District.

## BACKGROUND

10.     The NJOY brand was founded in 2006 with the formation of NJOY Inc., and was a pioneer in vaping and one of the first major electronic cigarettes brands in the United States.  In 2017, NJOY LLC purchased the assets of NJOY Inc., including the NJOY brand.  NJOY continues to serve as an innovator and thought leader in the vaping industry.

11.     For example, NJOY is the only company that has partnered with the National Institute of Drug Abuse ("NIDA") to develop, test and manufacture a Standard Research Electronic Cigarette (SREC) that plays a critical role in clinical and public health research in the United States.  SRECs are used as a consistent, well-characterized investigational product in independent clinical studies funded by NIDA and the National Institutes of Health.  SREC is currently used in 11 ongoing clinical studies and planned for use in at least 5 additional studies to expand scientific knowledge regarding the impact of e-cigarettes on public health.

12.     NJOY's mission is to offer a range of electronic nicotine products for adult consumers in the United States looking for a less harmful alternative to traditional combustible

cigarettes.  NJOY currently offers two commercial product lines.  NJOY Daily is a disposable electronic cigarette that has the same form factor as a traditional cigarette.  NJOY ACE is a pod vaporizer device that comprises a reusable and rechargeable electronic device and a disposable pod that stores a vaporizable liquid and is inserted into the electronic device for use.  Once the liquid in an ACE pod is depleted, the adult consumer can replace the used ACE pod with a new one.

13.     NJOY has made and continues to make substantial investments in the United States related to engineering, research and development, manufacturing, and obtaining regulatory authorization of its products, including NJOY ACE.  For example, NJOY maintains facilities and equipment in Wisconsin that support engineering, research and development, and quality control directed to design and development work for NJOY ACE and successor products, quality control and other testing for supporting NJOY's commercial products and regulatory authorization activities, and assessing customer feedback.  The liquid formulations used in NJOY ACE are produced in Florida and Maryland by contractors who manufacture the formulations exclusively for NJOY's products.

14.     NJOY's ACE product, shown below, is the only FDA-authorized pod vaporizer device on the market in the United States.  The Premarket Tobacco Product Applications ("PMTA") for ACE were received by FDA on March 10, 2020 and totaled tens of thousands of pages, including numerous scientific studies and extensive consumer research.  NJOY submitted scientific evidence demonstrating NJOY's ACE products are less harmful than combustible cigarettes; meaningful switching among consumers from combustible cigarettes to NJOY's ACE products; and youth prevalence data showing miniscule levels of youth interest in NJOY's ACE products.



15.     After two years of extensive scientific review, FDA issued a decision on April 26, 2022 granting market authorization for NJOY's ACE device and three tobacco-flavored ACE pods.  FDA made the following findings regarding the positive impacts on the public health that ACE provides as compared to traditional cigarette consumption:

- "[T]hese products have the potential to benefit adult smokers who switch completely or significantly reduce their cigarette consumption."

- "The NJOY User Study demonstrated that switching from combusted cigarettes to the new ENDS [electronic nicotine delivery system] product does occur among current adult smokers.  The applicant has therefore demonstrated the potential for these products to benefit adult smokers as compared to continued exclusive cigarette use."

- "Chemical testing submitted in the PMTAs was sufficient to determine that overall harmful and potentially harmful constituent (HPHC) levels in the aerosol of these products are lower than in combusted cigarette smoke.  The overall toxicological risk to the users of the new products is lower compared to cigarettes due to significant reductions in aerosol HPHCs of the new products compared to cigarettes."

Based on these and other findings, FDA concluded that "permitting marketing of the new products…is appropriate for the protection of the public health."

16.     NJOY's authorized ACE products are subject to continued FDA oversight in the form of post-market surveillance and reporting requirements that cover NJOY's: labeling; advertising, marketing and promotional materials; changes to manufacturing, facilities and controls; stability monitoring and testing; ongoing and completed studies; scientific investigations and literature; adverse experiences and changes to overall risk and health risks; sales and distribution data; policies and procedures regarding age- and identity-verification; policies and procedures regarding restrictions on access for individuals under the minimum age of sale; consumer evaluation and research studies; creation and dissemination of labeling, advertising, marketing and/or promotional materials; advertising and marketing plans; media tracking and optimization; and actual delivery of advertising impressions.

## THE ASSERTED PATENTS

17.     The '881 patent is entitled "Electronic Vaporizer" and names Gregory D. Conley and Daniel C. Hillenbrandt as inventors.

18.     The '881 patent describes an electronic vaporizer device that includes a cartridge and a power source.  The cartridge includes, for example, a housing with first and second apertures at a first and second end, respectively, the first end includes an electrically conductive portion that electrically couples to a conductive portion of the power source, and the second end is opposite the first end.  The housing further includes an airflow passageway that allows airflow through the cartridge, a solution, and a heating element configured to vaporize the solution responsive to electrical power received from the battery in the power source.

19.     The '864 patent is entitled "Electronic Vaporizer" and names Gregory D. Conley and Daniel C. Hillenbrandt as inventors.

20.     The '864 patent describes an electronic vaporizer including a cartridge configured to couple to a power source.  The cartridge includes, for example, a housing having an interior that

holds a solution, first and second apertures at a first end and second end of the housing that are in communication to allow airflow through the housing, an airflow passageway in the housing between the first and second apertures, and a heating element located within the housing configured to vaporize the solution responsive to electrical power received from the power source. The power source includes a battery and is adapted to be electrically coupled to the first end of the cartridge housing.

21.     NJOY owns by assignment the entire right, title, and interest to and in the '881 patent and the '864 patent.

## THE ACCUSED PRODUCTS

22.     The products at issue are electronic nicotine delivery systems ("ENDS") products, and more specifically, vaporizer devices that include a disposable cartridge (or pod) that contains a liquid nicotine solution and components to vaporize the liquid in order to generate an aerosol for inhalation by a consumer; and a device into which the cartridge can be inserted that includes a battery and circuitry to power and operate the components in the cartridge.

23.     The Accused Products include the JUUL system, which comprises a disposable cartridge ("JUULpod") containing a liquid nicotine solution and components to vaporize the liquid, and a device ("JUUL device") into which a cartridge can be inserted that includes a battery and circuitry to power and operate the components in the cartridge.

## COUNT I
### (Infringement of U.S. Patent No. 10,334,881)

24.     NJOY incorporates by reference the preceding paragraphs 1-23 as though fully set forth herein.

25.     JLI has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, at least claims 1, 3, 4, 6-9, 11, 12, 14-17, 19, 20, 22, 23, and 25-27 of the

'881 patent by making, using, offering to sell, selling (directly or through intermediaries), and/or importing in this District and elsewhere in the United States, the JUUL system, including the JUUL device and JUULpod.

26.     An exemplary claim chart comparing independent claims 1, 8 and 16 of the '881 patent to the representative JUUL product is attached as Exhibit 3.

27.     On information and belief, JLI has actual knowledge of the '881 patent at least through the filing of this Complaint and the companion action in the U.S. International Trade Commission.  On information and belief, JLI had actual knowledge of the '881 patent prior to the filing of this Complaint.  For example, the '881 patent and '864 patent are listed as a cited reference on at least ten U.S. patents assigned to JLI.

28.     On information and belief, JLI is currently actively inducing infringement and has induced infringement of the '881 patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing others to directly infringe, literally or under the doctrine of equivalents, the '881 patent. On information and belief, JLI has encouraged consumers to use the JUUL device and JUULpod in an infringing manner, including by selling and importing the JUUL device and JUULpods and providing instructions to consumers on how to combine and use the JUUL device with JUULpods.



https://www.juul.com/learn/device

29.     On information and belief, JLI also actively promotes the use of JUUL devices with JUULpods through marketing materials, technical specifications, and user manuals.   On information and belief, JLI also actively encourages the sale and importation of JUUL devices and JUULpods through its sales and distribution channels.   Thus, JLI has specific intent to induce, or is willfully blind to inducing infringement of the '881 patent.   On information and belief, JLI continues to engage in these activities with knowledge of the '881 patent and knowledge that its actions induce others to directly infringe the '881 patent.

30.     On information and belief, JLI also contributes to infringement under 35 U.S.C. § 271(c) by providing or selling the JUUL device and/or the JUUL pod.   The JUUL device and JUULpod constitute a material part of the asserted claims of the '881 patent, are specially designed and made for use in an infringing manner, and are not staple articles of commerce suitable for any substantial non-infringing use.   On information and belief, the JUULpod is designed solely for and

specifically adapted for use with the JUUL device, and vice versa.  Accordingly, JLI's importation of JUULpods or components thereof and JUUL devices constitutes  infringement under 35 U.S.C. § 271(c) because such importation contributes to direct infringement by consumers in the United States.  On information and belief, JLI continues to engage in these activities with knowledge of the '881 patent and knowledge that its acts contribute to infringement.

31.     On information and belief, JLI's infringement is willful.  For example, on information and belief, JLI has been on notice of the '881 patent and its infringement of the '881 patent since at least the filing of NJOY's action in the International Trade Commission alleging infringement of the '881 patent, but continues its infringing activities.

32.     NJOY has suffered, and will continue to suffer, irreparable harm as a result of JLI's infringement of the '881 patent for which there is no adequate remedy at law, unless JLI's infringement is enjoined by this Court. Accordingly, NJOY seeks a permanent injunction enjoining JIL from making, using, selling, offering to sell, and/or importing the accused JUUL products, and/or otherwise infringing, or inducing or contributing to the infringement of the '881 patent.

## COUNT II
### (Infringement of U.S. Patent No. 11,497,864)

33.     NJOY incorporates by reference the preceding paragraphs 1-23 as though fully set forth herein.

34.     JLI has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, claims 1-48 the '864 patent by making, using, offering to sell, selling (directly or through intermediaries), and/or importing in this District and elsewhere in the United States, the JUUL system, including the JUUL device and JUULpod.

35.     An exemplary claim chart comparing independent claims 1, 5, 9, 21, 25, 29, 38 and 45 of the '864 patent to the representative JUUL product is attached as Exhibit 4.

36.     On information and belief, JLI has actual knowledge of the '864 patent at least through the filing of this Complaint and the companion action in the U.S. International Trade Commission.  On information and belief, JLI had actual knowledge of the '864 patent prior to the filing of this Complaint.  For example, the '881 patent and '864 patent are listed as a cited reference on at least ten U.S. patents assigned to JLI.

37.     On information and belief, JLI is currently actively inducing infringement and has induced infringement of the '864 patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing others to directly infringe, literally or under the doctrine of equivalents, the '864 patent. On information and belief, JLI has encouraged consumers to use the JUUL device and JUULpod in an infringing manner, including by selling and importing the JUUL device and JUULpods and providing instructions to consumers on how to combine and use the JUUL device with JUULpods.



https://www.juul.com/learn/device

38.     On information and belief, JLI also actively promotes the use of JUUL devices with JUULpods through marketing materials, technical specifications, and user manuals.   On information and belief, JLI also actively encourages the sale and importation of JUUL devices and JUULpods through its sales and distribution channels.  Thus, JLI has specific intent to induce, or is willfully blind to inducing infringement of the '864 patent.  On information and belief, JLI continues to engage in these activities with knowledge of the '864 patent and knowledge that its actions induce others to directly infringe the '864 patent.

39.     On information and belief, JLI also contributes to infringement under 35 U.S.C. § 271(c) by providing or selling the JUUL device and/or the JUUL pod.  The JUUL device and JUULpod constitute a material part of the asserted claims of the '864 patent, are specially designed and made for use in an infringing manner, and are not staple articles of commerce suitable for any substantial non-infringing use.  On information and belief, the JUULpod is designed solely for and specifically adapted for use with the JUUL device, and vice versa.  Accordingly, JLI's importation of JUULpods or components thereof and JUUL devices constitutes infringement under 35 U.S.C. § 271(c) because such importation contributes to direct infringement by consumers in the United States.  On information and belief, JLI continues to engage in these activities with knowledge of the '864 patent and knowledge that its acts contribute to infringement.

40.     On information and belief, JLI's infringement is willful.  For example, on information and belief, JLI has been on notice of the '864 patent and its infringement of the '864 patent since at least the filing of NJOY's action in the International Trade Commission alleging infringement of the '864 patent, but continues its infringing activities.

41.     NJOY has suffered, and will continue to suffer, irreparable harm as a result of JLI's infringement of the '864 patent for which there is no adequate remedy at law, unless JLI's

infringement is enjoined by this Court. Accordingly, NJOY seeks a permanent injunction enjoining JIL from making, using, selling, offering to sell, and/or importing the accused JUUL products, and/or otherwise infringing, or inducing or contributing to the infringement of, the '864 patent.

## PRAYER FOR RELIEF

WHEREFORE, NJOY respectfully requests the following relief from this Court:

A.   Judgment that Defendant has infringed one or more claims of the '881 patent and the '864 patent;

B.   Judgment that Defendant's infringement of the '881 patent and the '864 patent is willful;

C.   Entry of a permanent injunction against Defendant and those in privity with Defendant and those acting in concert with Defendant against further infringement of the '881 and '864 patents;

D.   An award to Plaintiff of damages adequate to compensate Plaintiff for all infringement occurring through the date of judgment, with prejudgment interest, and for any supplemental damages as appropriate and post-judgment interest after that date;

E.   A declaration that this action for infringement is an exceptional case under 35 U.S.C. § 285 and an award to NJOY of reasonable counsel fees and costs; and

F.   An award of such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

August 22, 2023

OF COUNSEL:

Elizabeth S. Weiswasser
Anish R. Desai
WEIL GOTSHAL & MANGES LLP
767 5th Avenue
New York, NY 10153
Telephone: (212) 310-8000

W. Sutton Ansley
Christopher M. Pepe
Matthew D. Sieger
WEIL GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Telephone: (202) 682-7000

Adrian C. Percer
WEIL GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000

Beth Wilkinson
Brian L. Stekloff
James Rosenthal
Alysha Bohanon
WILKINSON STEKLOFF LLP
2001 M Street N.W., 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000

Respectfully submitted,

/s/ David E. Wilks
David E. Wilks (Bar No. 2793)
D. Charles Vavala, III (Bar No. 6098)
WILKS LAW, LLC
4250 Lancaster Pike, Suite 200
Wilmington, DE 19805
Telephone: (302) 225-0850
Email: dwilks@wilks.law
Email: cvavala@wilks.law

*Attorneys for Plaintiff NJOY, LLC*